We'll now hear arguments in Page v. Broadcasting Board of Governors. Okay. Mr. Page, you've reserved two minutes for rebuttal. May it please the Court. Plaintiff Appellant Dr. Carter Page, pro se. On September 23, 2016, false articles were printed by a technology company and a U.S. government-sponsored media outlet, directly leading to an escalating series of death threats. My life has never been the same. As a pro se LLM student, I concisely summarized for the District Court many essential changes that I needed to make to my complaint over the months that followed. I was never granted leave to amend nor any fair hearing whatsoever, following my many requests and notifications, including on April 6, 2018. Again, I was never granted leave to amend. Despite countless errors of law and erroneous assessments of the facts, I was never granted leave to amend. The truth has only become more facially apparent during the exceptionally short life of this civil action at the District Court level and throughout the many months since. Despite these countless problems, the denial of leave to amend is the biggest issue here today among many. All right. But, I mean, so the errors of law that you're referring to, why don't we start with the terrorism claims? So what's the error of law that you're asserting with respect to that dismissal? Yes, Your Honor. So the District Court focused in, they agreed with my arguments on the first and third, the first and fourth element of Lind v. Arab Bank. They took issue with two specific elements. And, again, just as to set the stage, there are many other claims which I subsequently added, so this is, I do not believe the case hinges on that. Other than the fact that this is a civil case, I don't believe that it hinges upon this, but it is. The issue is how did these articles demonstrate an intent to intimidate or coerce civilians, influence government policies or affect government conduct? So that, let me just give one example from my initial complaint on page A34. The political campaign communications director said, based on this article, using this article as a basis, quote, it's like a Batman movie. I mean, that is, you know, it's, but it's reality. But that's how many different crazy storylines and villains and people who are involved. And this same political campaign paid for the sources of this story. Which was Mr. Christopher Steele and the Fusion GPS. Which has subsequently, a lot more evidence has been coming over the months since I initially filed my complaint on September 14, 2017. So, you know, this week, or the week after the motion to dismiss by the government, the U.S. attorney, June Kim, filed his motion to dismiss this case. And he, the following week, he charged Akai Ed Ola with other terrorism-related offenses. I closely followed this case since the local New York attorneys had such inconsistent standards for their pleadings. There was much more, in terms of that same metric, the intimidate or coerce, the civilian population, the world quickly returned to normal with this alleged, or this bombing which occurred in the Penns, or the New York Port Authority. Whereas this, these continued false stories, which are based, which all stem from the false articles by the defendants, continue to this day. It's a great honor to be here, and, you know, the counsel to the defendants, in the very last case we heard, Mr. Boutros, in another case pleaded in the Southern District of California, cited my case just last month, talking about how it directly implicates matters of public concern. The real matters of public concern... To bring a terrorism count, you have to establish, among other things, that the conduct, the articles that were posted, the posting itself, was intended to intimidate or coerce civilians. Anything in the complaint that suggests that's the case? I have pleaded in my multiple requests for leave to amend, I explicitly mentioned that I would like to add a conspiracy charge, and that is directly on the basis of Ashcroft v. Iqbal. It is, you know, it's plausible on its face. If you agree with some of the top leaders in the U.S. Congress, including former chairman of the House Intelligence Committee, who has explicitly talked about conspiracy, and as I just mentioned, the campaign director who paid, or campaign communications director who paid for that, was working very closely with the, or had direct interactions with the defendant oath and their subsidiaries. In fact, as I noted to the district court on page A85, the author of the initial article specifically mentioned the head and the cofounder of Fusion GPS, which drove all these dangerous processes. He specifically admitted, as I showed with evidence, the true source of the defamatory claims was his old friend Glenn Simpson, who was the, who really, you know, was a key part of that conspiracy. Again, I do not want to put too much emphasis on that, because I included a vast number of additional claims, which I would like to add. And I think over the months which have come since, we keep seeing more. Just yesterday, the chairman, or the inspector general for the Department of Justice, sent a letter to the chairman of the Senate Judiciary Committee, Lindsey Graham, saying that after reviewing millions of documents related to these alleged crimes, they are going to finally release this very complicated report on Monday, December 9th, and then have a detailed hearing on December 11th. Again, I think just for Ashcroft and Iqbal standards, I have significantly exceeded the sufficient factual matter accepted as true to state a claim. I mean, you brought Federal Tort Claims Act claims as well, right? Yes. Among, among other. I've also... But that one, according to the district court, was a failure to exhaust. And you, I think, cite to a letter that you sent to the FBI director, the then-FBI director, that would satisfy the exhaustion requirement for claims against the broadcasting agency. I also... Why would that be? What would the FBI director have to do with exhausting claims against the Board of Governors for the agency? Your Honor, when this report comes out on December 9th, there is literally, as the inspector general has already reported to Chairman Lindsey Graham and Ranking Member Dianne Feinstein, a million records. And one of the allegedly, according to the House Intelligence Memo, which I pleaded to the court about FISA abuse on A82 and A83, there is already significant evidence which greatly exceeds the Ashcroft v. Iqbal standards. But, again, there is much more to come. And I was hoping to be able to add this. Well, you've reserved two minutes for rebuttal. Thank you, Your Honor. Let's hear now from Parker for oath. Is that correct? Yes, Your Honor. Mr. Parker, on behalf of Appellee Oath, Inc., Dr. Page has three claims against my client, Oath. All are based on articles that were published by media outlets that are actually subsidiaries of Oath. And all are based on alleged false reporting of Dr. Page's connections to the Trump campaign and to certain Russian officials. He only has one Federal claim, which Your Honor was asking about, the terrorism claim. And as your question suggested, that claim is frivolous on its face. We go through in our briefing the four different elements of that claim and how they weren't satisfied here. And we also explain how Dr. Page is actually pointing to the actions of other people, such as the readers of these articles who made death threats against him to try to satisfy these elements. But for now, it suffices to say that a publication of a news article is just simply not an act of international terrorism. Now, without that Federal claim, the merits of Dr. Page's state law claims are irrelevant here. And they were not considered below because the district court properly declined to exercise jurisdiction over them. Now, the first possible basis of jurisdiction over those claims would have been supplemental jurisdiction. But the district court properly dismissed Dr. Page's only Federal claim, his terrorism claim, on the merits. And without that claim, there was no reason to hear the state law claims. And that's especially true given that the case was dismissed very early in the proceedings, discovery had been stayed, and so there had not been any expenditure of judicial or party resources. The other possible route to subject matter jurisdiction over these claims would have been diversity jurisdiction. But the district court properly concluded there that there was no diversity jurisdiction. And that's because Dr. Page actually admitted in his complaint that both he and Oath are citizens of New York. Now, after his complaint was dismissed, he did try to amend and retract that admission, that he was a citizen of the state of New York. But there are, he basically wanted to argue that he lives a, quote, unquote, fugitive lifestyle and has been living, quote, unquote, in various temporary homes outside of the state of New York. Essentially what he wants to argue is that he's not a citizen of any state, that he's a stateless party. There are two fatal problems with that argument. The first is that it directly contradicts his original pleading, and therefore it was not an abuse of discretion for the district court to deny him leave to amend, given that it would directly contradict what he had admitted in his original complaint. And the case on point for that proposition is described in our briefing. It's Austin, a Second Circuit case. And Dr. Page argues on appeal that he should be given leeway because he's pro se, but the plaintiff in Austin was pro se as well. And secondly, even if Dr. Page could retract this admission that he's a citizen of the state of New York and advance this theory that he is not a citizen of any state, that theory goes nowhere because this court has repeatedly ruled that parties who are not citizens of any state, such as Indian tribes or United States citizens that are domiciled abroad, cannot establish diversity jurisdiction under the plain language of the statute. And lastly, Dr. Page had originally appealed from the denial of his motion for a temporary restraining order. However, he explicitly abandoned that argument in his reply brief at page 12. And if there are no questions, I'll just yield the remainder of my time to the Broadcasting Board of Governors. All right. Let's hear then from the government. That's Mr. Kim. Is it Cha Kim or Kim? Cha Kim. Mr. Cha Kim. Sorry. Not a problem, Your Honor. Good morning. May it please the Court. Stephen Cha Kim. I serve as an assistant United States attorney in the Southern District of New York. As I did before the district court, I represent the Fallon FLE Broadcasting Board of Governors, which is now — Is that a new name now? Yes, Your Honor. U.S. Agency for Global Media? It is. Will you be changing the caption to reflect that? We can, Your Honor. The change happened relatively late in the litigation. We can do that, too, I suppose. But that would be the proper thing to do, right? I believe so, Your Honor. Okay. But for ease of reference, I'll just refer to it as the board of the agency today. Mr. Page's claims are meritless for a long list of reasons, and the district court was correct to dismiss them, and Judge Schofield did not abuse her discretion in denying Mr. Page leave to amend his complaint. To deal with the Federal Tort Claims Act claims first, there is simply no subject matter jurisdiction for district court to entertain claims of libel, including defamation or torts interference with contract or prospective business relations against the government. And even if the court did, there is no subject matter jurisdiction because Mr. Page failed to exhaust his administrative remedies to assert those claims. As for the terrorism claims, which Mr. Page raises under the Anti-Terrorism Act, that statute is clear that no suit may be brought against the United States or any government instrumentality. Even if there were a subject matter jurisdiction, Mr. Page failed to state a claim. He brings claims against the agency or the board for actions by Radio Free Europe, which is a separate entity, and by act of Congress, expressly not a government agency or instrumentality. He further fails to state a claim because on its face, clearly, under any reading of his allegations, they do not rise to the level of terrorism, for the reasons Your Honor suggested earlier. Finally, Judge Schofield did not abuse her discretion in denying leave to amend. No set of new pleadings could possibly fix the categorical lack of subject matter jurisdiction here. And to the extent that Mr. Page sought to add new parties, such as the United States, former Director Comey, or any other party, such amendment would be pointless for all the reasons already stated. To the extent that there is any possibility of amending to bring a claim against Radio Free Europe, that would also be pointless, as the State statute of limitations on any kind of State law defamation claim has already run. As such, this Court should affirm the district court's rulings in all respects. And unless the Court has further questions, I will stop there. So the State law claims asserted against the board, correct? Under the Federal Tort Claims Act, Your Honor, yes. So the Federal Tort Claims Act requires exhaustion. It does. And absent exhaustion, then, the State law claims, those Federal Tort Claims Act claims are gone. Yes, Your Honor. I meant to the extent that there's any effort to name Radio Free Europe, for instance, which would be the proper actor for the allegations. That claim, of course, wouldn't be brought against the government, but it would be brought against it as a private State actor, but such a claim would be futile too. And in terms of the exhaustion requirements, so who should the notice or the claim have been brought to for this defendant? I assume not the FBI director, but to whom should it have gone? Well, to the Broadcasting Board of Governors at the time, and they are the named agency. So a letter to them would have been sufficient? Absolutely. All the law requires is some sufficient basis to put the agency on notice of the nature of the claims and the fact that it is the target of a claim. Certainly, the letter to FBI Director Comey didn't come close to doing that. All right. Okay. Thank you. Thank you, Your Honor. All right. So, Mr. Page, you have two minutes for rebuttal. Thank you, Your Honor. There are many accurate points that the government and oath have stated. There are many elements which are very far off and incomplete. And again, I would highlight my opening remarks where I have just asked for leave to amend, and I think there is significant additional evidence which I started to, I had a very limited amount of space in which I could start to describe this as only allocated a very, just a couple of pages by the district court. And unfortunately, I have not been able to add that, and so it's not fully briefed and I was stopped from doing so. So in terms of your question about the state law claims, again, I would highlight what I had noted in my briefs about additional claims on page A96, and with the additional footnote on page A102, which adds a significant amount of additional claims, and with respect, again, given the limitations of space, I was not allowed to add the tremendous amount of administrative steps I took with the FBI and agents of the counterintelligence division here in New York in March of 2017, where I discussed many of those terror threats which I was still getting. I don't mean to interrupt you, but the point is that to bring claims under the Federal Tort Claims Act, you have to exhaust remedies and you have to do that by reaching out to the folks you're otherwise going to sue. So you had no contact with the, what's now the United States Agency for Global Media, but previously the board, prior to filing this suit, right? Well, with respect, I had asked to, in accordance with the FTCA, I had asked to change that to the United States as a co-defendant, and which would allow me to encompass my initial claims, which were not perfectly pleaded, but I started, you know, in versus Federal Board of Prisons, there should be review with special solicitude, and there must be, the pleadings must be construed liberally and interpreted to raise the strongest arguments they suggest. And that example about my New York alleged residence, I had a very long description of what these terror threats had done to my life. And unfortunately, I, they were completely ignored in the, in the government or in the, in district courts decision. Okay. Well, we will reserve decision. Thank you. Thank you, Your Honor. Thank you. Thank you to defense counsel. I now hear arguments.